UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA


WILLIAM EARL ROSS, )
)
                Plaintiff, )
  vs. ) No. 1:03-cv-1700-SEB-VSS
)
SUPERINTENDENT STAN KNIGHT, et al., )
)
                Defendants. )


### Entry Discussing Motion of Mary Mansfield for Summary Judgment

    This is an action pursuant to the Americans With Disabilities Act ("ADA") and the Rehabilitation Act ("RA") in which William Ross ("Ross"), a former prisoner at the Correctional Industrial Facility ("CIF"), claims that the defendants discriminated against him on the basis of his disability when they did not provide him with the accommodations he requested in his job at the CIF or in his living situation. One of the defendants is Mary Mansfield, the health care administrator at the CIF. As a result of the screening required by 28 U.S.C. § 1915A(b), the Entry of March 4, 2005, the claim against Mansfield is that she failed to provide Ross with health care services for his disability.

### Summary Judgment Standard

    Mansfield seeks resolution of the claim against her through the entry of summary judgment.

    Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). To survive summary judgment, the non-movant must set forth "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Once a properly supported motion for summary judgment is made, the party that bears the burden of proof on a particular issue at trial cannot resist the motion by merely resting on its pleadings. *U.S. v. Lair*, 854 F.2d 233, 235 (7th Cir. 1988). Rather, the party opposing the motion must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

Through the process described above, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Because Ross is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), was issued. Through this notice, Ross was notified of the nature of Mansfield's motion, of the proper manner in which to respond and of the consequences of failing to respond.

## Material Facts

The following facts are undisputed or if disputed represent the version most favorable to Ross as the non-movant.

1. Ross was formerly confined at the CIF serving the executed portion of a sentence imposed following his conviction for a crime.

2. Ross' arm has been amputated below the right elbow. Ross has a prosthetic right arm.

3. Mansfield is and was the health care administrator at the CIF. She is not a licensed physician, does not possess a nursing license, and did not participate in the drafting of IDOC Policy No. 01-04-101 (hereafter "Policy 01-04-101").

4. Inmates in the Indiana Department of Correction ("DOC") are classified pursuant to Policy 01-04-101.

5. Ross' medical status is listed as "Free of Disability" pursuant to Policy 01-04-101. This assessment was made by a licensed medical professional upon Ross' incarceration in November of 2001.

6. Mansfield never examined Ross for the purpose of assessing the presence of any disability for purposes of classification at CIF. Even if she disagrees with Ross' offender classification or the classification of his disability status, she has no authority to change his classification. This can only be done by a licensed medical professional.

7. Mansfield is not responsible for determining Ross' disability status within the DOC. This function was performed by a licensed medical professional.

8.     Mansfield never inaccurately recorded Ross' disability in his Offender medical packet or institutional packet. Mansfield never encouraged others to inaccurately record Ross' disability status in his Offender medical packet or institutional packet.

9.     Mansfield has never discriminated against Ross based upon his disability.

10.    As health care administrator, Mansfield has no involvement in accommodations for offenders outside the medical department. She had no control over Ross' request for accommodations for meals, housing, employment access, or computer/library room equipment.

## Discussion

The claims presented by Ross are asserted pursuant to both the RA and Title II of the ADA.

- The RA, codified in various sections of Title 29 of the United States Code, provides that a qualified disabled person shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The RA defines an "individual with a disability" as a person that has a "physical or mental impairment, which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).

- The ADA was designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (b)(4). This case concerns Title II, commonly referred to as the public services portion of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.

Title II of the ADA applies to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). Because Title II of the ADA was modeled after § 504 of the RA, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of the University of California,* 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

Although Title II of the ADA and the RA do not support individual liability, *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 207 (2d Cir. 2001)("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir. 2000)("In suits under Title II of the ADA . . . the proper defendant usually is an organization rather than a natural person . . . . Thus, as a rule, there is no personal liability under Title II."), Mansfield's motion for summary judgment does not rest on such an argument.

The claim against Mansfield is that she failed to provide Ross with health care services for his disability. Ross claims that Mansfield denied him the benefits of the health care services by not accurately enforcing the recording of his disability pursuant to the DOC Health Care Services Directive, violating the ADA and the RA. This is a claim, in other words, that Mansfield wrongly classified Ross as "Free of Disability" and that she did so because of his disability.

To prevail on a claim under either Title II of the ADA or under the RA, Ross must show that he is a qualified individual with a disability as defined by the statute, was denied the benefit of services at the CIF, and was denied this benefit by reason, or solely by reason, of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Inmates who fall within the ambit of the ADA "have the same interest in access to the programs, services, and activities available to the other inmates of their prison as disabled people on the outside have to the counterpart programs, services, and activities available to free people. They have no right to more services than the able-bodied inmates, but they have a right, if the Act is given its natural meaning, not to be treated even worse than those more fortunate inmates." *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 486 (7th Cir. 1997). A person is a qualified individual under the provision of the ADA if he has a disability and with or without accommodations meets the requirements for participating in a program. *Love v. Westville Correctional Center,* 103 F.3d 558, 560 (7th Cir. 1996).

Mansfield first argues that Ross was not a qualified individual with a disability. In order to qualify as "disabled" under this definition, Ross must establish that he was regarded by the DOC or staff at the CIF as having (1) a physical or mental impairment; (2) that limits a major life activity; and (3) the limitation is substantial. *Smaw v. Commonwealth of Virginia Dept. of State Police*, 862 F.Supp. 1469, 1472 (E.D.Va. 1994). His amputated right arm below the elbow is without doubt a disability. However, he has a prosthetic arm which allows him to sit down and do clerical work and to type or handwrite his correspondence. This prosthetic device and its effect on his ability to function must be taken into account in the determination of whether he is substantially limited in a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999). The ADA does not define or otherwise designate those things that constitute "major life activities." However, EEOC regulations on the ADA state that major life activities "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Also, the ADA does not define the term "substantially limited" or otherwise specify how to determine whether an individual is substantially limited in a major life activity. Again, however, EEOC regulations step in and define "substantially limits" in pertinent part as follows:

4

>    (1) The term substantially limits means:
>
>    (i) Unable to perform a major life activity that the average person in the general population can perform; or
>    (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j). Ross has not identified a substantial limitation in a major life activity based on his disability. He is therefore not a "qualified individual with a disability" within the meaning of the ADA and the RA.

Apart from the qualified disability status, moreover, and as noted above, Mansfield did not determine Ross' disability status within the DOC, did not fail to record his disability status as determined by the DOC, did not adopt Policy 01-04-101, did not perform the classification required pursuant to Policy 01-04-101, did not have the authority to and did not make medical decisions regarding Ross' care, and did not discriminate against Ross based upon his asserted disability. These circumstances show that, whether Ross was properly classified pursuant to Policy 01-04-101 or not, Mansfield did not deny Ross any benefits associated with his asserted disability.

Ross sought injunctive relief in this action. However, he was released from incarceration in July 2006, and is no longer subject to the conditions of confinement at the CIF or at any other prison. This change in his status renders his claim for injunctive relief moot. *See Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief . . . become[s] moot."); *Higgason v. Farley,* 83 F.3d 862, 871 (7th Cir. 1996) (same).

A court lacks jurisdiction to adjudicate a claim which is moot. *Board of Educ. of Downers Grove Grade Sch. No. 58 v. Steven L.,* 89 F.3d 464, 467 (7th Cir. 1996); *Houston v. Sheahan,* 62 F.3d 902, 903 (7th Cir. 1995). Ross' claim for injunctive relief must be **dismissed for lack of jurisdiction as moot.**

## Conclusion

Ross has not identified a genuine issue of material fact as to his claim against Mansfield. Her motion for summary judgment is therefore **granted.**

**IT IS SO ORDERED.**

Date: 12/08/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Donald G. Banta
INDIANA STATE ATTORNEY GENERAL
Donald.Banta@atg.in.gov

Andrew Ryzard Bloch
ZEIGLER COHEN & KOCH
abloch@zcklaw.com

Betsy M. Isenberg
INDIANA STATE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com

William Ross
c/o Volunteers of America
611 N. Capitol Ave.
Indianapolis, IN 46204