UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| WILLIAM EARL ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 1:03-cv-1700-SEB-VSS |
| ) | |
| SUPERINTENDENT STAN KNIGHT, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion of State Defendants for Summary Judgment**

This is an action pursuant to the Americans With Disabilities Act ("ADA") and the Rehabilitation Act ("RA") in which William Ross ("Ross"), a former prisoner at the Correctional Industrial Facility ("CIF"), claims that the defendants discriminated against him on the basis of his disability when they did not provide him with the accommodations he requested in his job at the CIF or in his living situation. The defendants in this action are Paul VanKavelaar, Jeff Gabbard, Jennifer French, Stanley Knight and Charles Pierce ("State defendants"), as well as Mary Mansfield ("Mansfield").

**Summary Judgment Standard**

The State defendants seek resolution of the claim against them through the entry of summary judgment.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). To survive summary judgment, the non-movant must set forth "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

> Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, [the non-movant] must respond to the defendants' motion with evidence setting forth specific facts showing that there is a genuine issue for trial. . . . To successfully oppose the defendants' motion for summary judgment, [the non-movant] must do more than raise a "metaphysical doubt" as to the material facts . . . and instead must present definite, competent evidence to rebut the motion.

*Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001) (internal citations omitted).

The role of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson,* 477 U.S. at 247). A "material fact" is one that "might affect the outcome of the suit." *Anderson,* 477 U.S. at 248. A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

Once a properly supported motion for summary judgment is made, the party that bears the burden of proof on a particular issue at trial cannot resist the motion by merely resting on its pleadings. *U.S. v. Lair*, 854 F.2d 233, 235 (7th Cir. 1988). Rather, the party opposing the motion must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

Through the process described above, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Because Ross is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), was issued. Through this notice, Ross was notified of the nature of the State defendants' motion for summary judgment, of the proper manner in which to respond and of the consequences of failing to respond.

**Material Facts**

The following facts are undisputed or if disputed represent the version most favorable to Ross as the non-movant.

1.   Ross was formerly confined at the CIF serving the executed portion of a sentence imposed following his conviction for a crime.

2.   Ross' right arm has been amputated below the elbow. Ross has a prosthetic right arm.

3.   Ross has requested accommodations while confined at the CIF and accommodations were provided in those areas where it was determined that it was necessary in order to meet Ross' needs. These accommodations included placement in a different housing unit, assignment to a bottom bunk and assignment to a position with the Education Department at the CIF.

4.   Ross received accommodations in the dining room at the CIF after submitting a grievance.

5.   Ross admits he was "assigned a bottom bunk, assigned to a dormitory that was better equipped to accommodate his disability, modified the window with a handle, assigned an inmate job, equipped with velcro shoes and prosthetic arm and dinning [sic] room services."

6.   Ross' request that a program for an ADA Rehabilitation and Support Group be organized at the CIF and that a paid offender advocate lead the group within the CIF was denied because the Indiana Department of Correction ("DOC") employed an Affirmative Action Offender Liaison who was empowered to address any issues regarding the ADA. Furthermore, offender groups at the CIF are not afforded a paid offender advocate.

7.   The request for an ADA Support Group was not denied because of Ross' disability.

8.   Jennifer French is employed by the DOC at the CIF as an Administrative Assistant.

9.   Ross submitted grievances in 2002 regarding accommodations that he believed were necessary in order for him to function within the CIF.

10.   Ross requested accommodations in his housing assignment, meals and employment position.

11.   Ross also sought a prosthetic device from the medical department.

12.   In June 2002, Jayne Brown, Northern Region Coordinator, met with Ross and discussed ways to accommodate his needs.

13.   Ms. Brown made recommendations for accommodating Ross. The recommendations included obtaining a prosthetic arm for Ross; moving Ross to a housing unit with common bathrooms; assigning him to a bottom bunk; modifying a window in his room to allow the window to remain open without the insertion of a metal pin; providing him with a storage box he could open with one hand; having a food tray delivered to him in the dining room; ordering special shoes that did not need to be tied; and checking for open work assignments in the Education Department.

14.   Based upon these recommendations, Ross was moved to a housing unit with a common bathroom, assigned to a bottom bunk, provided with a food tray in the dining room and provided employment in the Education Department. Furthermore, special shoes were ordered for Ross and a window in his cell was modified to allow him to place it in the open position. The medical department also obtained a prosthetic arm for Ross.

15.   In July 2004, Ross requested additional accommodations in the library at the CIF. These additional accommodations included a request that a computer and space be set aside for him with a full table top to allow him to lay out his books and papers while working and that he not be required to perform any physical work, such as dusting and restocking shelves, because of his disability.

16. These accommodations were denied because 1) there are stands available in the library to hold books and papers while an offender is using a computer, 2) there is not enough space within the library to provide a large table or desk with a computer specifically for Ross' use, and 3) the physical work is part of the duties of a library clerk at the CIF.

17. The denial of any accommodations requested by Ross was based upon restrictions within the CIF and not because of Ross' disability.

18. Paul VanKavelaar was employed in the Education Department at the CIF in August 2004.

19. In approximately August of 2004, Ross complained to Mr. VanKavelaar about his access to the library at the CIF. Specifically, Ross complained that a computer with table space within the library was to be for his use based upon a recommendation by Assistant Superintendent John George.

20. In August 2004, Mr. VanKavelaar sent Ross a memorandum detailing his response to Ross' complaints regarding access to the library, explaining to Ross that there was no reason that Ross would require the designation of a specific computer for the completion of work that was not assigned by the Education Department.

21. The offenders confined within the CIF are not provided with personal computer time, therefore, it would be unreasonable to allow Ross to have special use of a computer at his convenience for the completion of his personal matters.

22. If Ross' request was met, the CIF library would be required to provide use of the computers to all offenders for their personal use at their convenience and this would require the expense of purchasing additional computers and require additional space for the computers.

23. Ross' request for the use of a computer with table space at his convenience was denied because the request was not reasonable when considered in light of the needs of the library's clients.

24. The decision to deny Ross' request was not based upon any disability.

25. Charles Pierce is and was employed by the DOC at the Reception Diagnostic Center in 2001 as a Classification Specialist.

26. As a Classification Specialist, Mr. Pierce would meet with offenders to interview them and obtain information in order to decide their classification within the DOC.

27. The DOC has enacted policies governing the classification of offenders in Policy No. 01-04-101.

28. The medical and disability status are determined by medical personnel after an examination and review of an offender's medical history.

29. As a Classification Specialist, Mr. Pierce would not alter decisions made by medical personnel regarding the medical and disability status of offenders.

30. Ross was classified by medical personnel in approximately November 2001 as free from illness or injury and as having no disability. His medical status is listed as A, which is defined by Policy 01-04-101 as: "Free of illness or injury; free of physical, mental or emotional impairment; individuals with short-term self-limiting condition requiring minimal surgical, medical, nursing or dental intervention limited to 30 days duration."

31. Ross' disability status is listed as an A, which is defined by Policy 01-04-101 as: "No disability."

32. Mr. Pierce was not responsible for determining Ross' medical and disability status.

33. Any decision that Mr. Pierce did make regarding Ross' classification was not made to discriminate because of the loss of a portion of his arm.

## Discussion

The claims presented by Ross are asserted pursuant to both the RA and Title II of the ADA. These claims, as recited in the Entry of March 4, 2005, are the following:

> The claims which remain are the following: (1) a claim for injunctive relief against Superintendent Stan Knight in his official capacity; (2) a claim for damages against Classification Specialist Charles Pierce in his individual capacity for causing the record to reflect that Ross had no disability; (3) a claim for damages against Health Care Administrator Mary Mansfield in her personal capacity for not providing Ross with health care services for his disability; (4) a claim against ADA Coordinator Jess Gabbard in his personal capacity for not providing Ross with the accommodations for his disability; and (5) a claim for damages against Acting Education Director Paul Van Kavellaar and Administrative Assistant Jennifer French in their individual capacities for not providing Ross with accommodation for his disability in the prison library.

The claim against Mansfield is addressed in a separate ruling. The only claims addressed in this Entry are those asserted against the State defendants.

- The RA, codified in various sections of Title 29 of the United States Code, provides that a qualified disabled person shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The RA defines an "individual with a disability" as a person that has a "physical or mental impairment, which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).

- The ADA was designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (b)(4). This case concerns Title II, commonly referred to as the public services portion of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132.

Title II of the ADA applies to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). Because Title II of the ADA was modeled after § 504 of the RA, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of the University of California,* 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

Ross claims that he was improperly classified by the State defendants and as a result was not accorded the services mandated by the ADA and the RA. Title II of the ADA and the RA do not support individual liability. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 207 (2d Cir. 2001)("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir. 2000)("In suits under Title II of the ADA . . . the proper defendant usually is an organization rather than a natural person . . . . Thus, as a rule, there is no personal liability under Title II."). Insofar as the State defendants are sued in their individual capacities, therefore, their motion for summary judgment must be **granted.**

To prevail on a claim under either Title II of the ADA or under the RA, Ross must show that he is a qualified individual with a disability as defined by the statute, was denied the benefit of services at the CIF, and was denied this benefit by reason, or solely by reason, of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Inmates who fall within the ambit of the ADA "have the same interest in access to the programs, services, and activities available to the other inmates of their prison as disabled people on the outside have to the counterpart programs, services, and activities available to free people. They have no right to more services than the able-bodied inmates, but they have a right, if the Act is given its natural meaning, not to be treated even worse than those more fortunate inmates." *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 486 (7th Cir. 1997). A person is a qualified individual under the provision of the ADA if he has a disability and with or without accommodations meets the requirements for participating in a program. *Love v. Westville Correctional Center,* 103 F.3d 558, 560 (7th Cir. 1996).

The State defendants argue that Ross was not a qualified individual with a disability. In order to qualify as "disabled" under this definition, Ross must establish that he was regarded by the DOC or staff at the CIF as having (1) a physical or mental impairment; (2) that limits a major life activity; and (3) the limitation is substantial. *Smaw v. Commonwealth*

*of Virginia Dept. of State Police,* 862 F.Supp. 1469, 1472 (E.D.Va. 1994). His amputated right arm below the elbow is without doubt a disability. However, he has a prosthetic arm which allows him to sit down and do clerical work and to type or handwrite his correspondence. This prosthetic device and its effect on his ability to function must be taken into account in the determination of whether he is substantially limited in a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

The ADA does not define or otherwise designate those things that constitute "major life activities." However, the Equal Employment Opportunity Commission has "defined the term 'major life activities' to include 'functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959, 961 (7th Cir. 1996) (citing 29 C.F.R. at 1630.2(i)). "Substantially limits" is defined as a person either unable to perform a major life function or is "significantly restricted as to the condition, manner or duration" under which the person can perform a particular major life function when compared to the average person. 29 C.F.R. at 1630.2(j). *See Homeyer,* 91 F.3d at 961.

Ross has not identified a substantial limitation in a major life activity based on his disability. On the contrary, he has not identified any program or activity at the CIF in which he was unable to participate. He is therefore not a "qualified individual with a disability" within the meaning of the ADA and the RA. Accordingly, Ross' claim that ADA Coordinator Jess Gabbard did not provide Ross with the accommodations for his disability and Ross' claim that Acting Education Director Paul Van Kavellaar and Administrative Assistant Jennifer French did not provide Ross with accommodation for his disability in the prison library cannot survive summary judgment.

Apart from the qualified disability status, moreover, and as noted above, defendant Pierce did not determine Ross' disability status within the DOC and did not fail to record his disability status as determined by the DOC, did not adopt Policy 01-04-101, did not perform the classification required pursuant to Policy 01-04-101, and did not discriminate against Ross based upon his asserted disability. These circumstances show that, whether Ross was properly classified pursuant to Policy 01-04-101 or not, Pierce did not deny Ross any benefits associated with Ross' asserted disability.

Ross sought injunctive relief in this action. However, he was released from incarceration in July 2006, and is no longer subject to the conditions of confinement at the CIF or at any other prison. This change in his status renders his claim for injunctive relief moot. *See Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief . . . become[s] moot."); *Higgason v. Farley,* 83 F.3d 862, 871 (7th Cir. 1996) (same).

A court lacks jurisdiction to adjudicate a claim which is moot. *Board of Educ. of Downers Grove Grade Sch. No. 58 v. Steven L.,* 89 F.3d 464, 467 (7th Cir. 1996); *Houston v. Sheahan,* 62 F.3d 902, 903 (7th Cir. 1995). Ross' claim for injunctive relief must be **dismissed for lack of jurisdiction as moot.**

**Conclusion**

Ross has not identified a genuine issue of material fact as to his claim against the State defendants. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). The motion for summary judgment of these defendants is therefore **granted.** Judgment consistent with this Entry and with the Entry addressing Mansfield's motion for summary judgment shall now issue.

**IT IS SO ORDERED.**

Date: 12/08/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana